IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Nationwide Affinity Insurance Company of America, | ) | C/A No. 3:20-cv-03696-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| Kristie Logan, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This insurance declaratory judgment matter is before the court on Plaintiff Nationwide Affinity Insurance Company of America's ("Plaintiff") Motion for Summary Judgment ("Motion"). [ECF No. 15.] For the reasons set forth below, the court grants Plaintiff's Motion.

**BACKGROUND & PROCEDURAL HISTORY**

This coverage dispute presents the question of whether Defendant Kristie Logan's ("Defendant") injuries, sustained as a result of a gunshot, arise out of the ownership, maintenance, or use of a vehicle such that she is entitled to uninsured motorist ("UM") coverage pursuant to her insurance policy with Plaintiff. Plaintiff submits that the undisputed facts establish that the injuries do not arise out of the ownership, maintenance, or use of an uninsured vehicle as a matter of law. Defendant counters that there is a dispute of fact as to whether her injury occurred as the result of the "use" of the automobile, meaning summary judgment would not be appropriate.

1

## I. Background Facts.

The facts surrounding the shooting and Defendant's injuries are largely undisputed[1] for purposes of this action. On September 15, 2017, Defendant went to Empire Nightclub located at 920 Lady Street, Columbia, South Carolina. [ECF No. 15-2, Logan Dep. at 13:24–14:7.] Two rappers, John Bates, Jr. ("Bates") and Maleik Houseal ("Houseal"), were scheduled to perform at the Empire Nightclub that night. [ECF No. 1-2, Underlying Compl. at ¶¶ 11, 15–16, 20.] At the time of the event, Bates was a member of the "Blood" gang, and Houseal was a member of the "Cripp" gang. *Id.* at ¶¶ 22–23. An altercation between the two rappers occurred inside the nightclub before guests, including Defendant, were ushered outside around 2:00 a.m. *Id.* at ¶¶ 26–31, 37; *see also* Logan Dep. at 23:3–15. The altercation continued outside.

After leaving the nightclub, Defendant was standing on the sidewalk at an intersection, and she saw a flash come from a car window. Logan Dep. at 28:7–18; 30:19–22. Defendant was then struck by a bullet to her right knee. *Id.* at 29:12–25; Underlying Compl. at ¶ 38. The intended target, according to Defendant's complaint in an underlying action, was not Defendant. Underlying Compl. at ¶ 34. It was Houseal. *Id.* Defendant's injuries relate exclusively to the bullet fired from the car; Defendant was not injured by the car itself. Logan Dep. at 49:15–19.

During Defendant's deposition, she testified that at the time she saw the flash, the car from which the shots were fired was sitting still. Logan Dep. at 47:16–19; 49:4–12, 23–25; 66:18–25. The surveillance video taken from the corner of Lady Street and Park Street shows a vehicle pull up to a spot on the sidewalk near the nightclub and come to a stop at 2:10:42 a.m. [ECF No. 15-

---

[1] Defendant's opposition to summary judgment concedes that "the factual summary of the incident" in Plaintiff's memorandum in support of the Motion is "more or less accurate . . . , with the exception of [Plaintiff's] description of the assailant's vehicle 'sitting still and not moving' at the time of the shooting." [ECF No. 16 at 2.]

2

3.] The vehicle stays stopped in that same location for just over a minute. At 2:11:57 a.m., the surveillance video shows shots fired from the vehicle, and the vehicle moving from its stopped position. *Id.* Whether the vehicle was or was not moving at the time the shots were fired appears to be the one point of disagreement between the parties.[2] Plaintiff submits that the surveillance video shows the vehicle was stopped at the time the shots were fired. [ECF No. 15-1 at 9–10 ("The injuries occurred when the vehicle was not moving[.]").] Defendant's opposition submits that "the shooter's vehicle was in fact moving both before, during and after the incident." [ECF No. 16 at 3.]

On October 21, 2020, Defendant filed a personal injury lawsuit against the nightclub and two John Doe individuals in the Court of Common Pleas for Richland County, South Carolina. [ECF No. 1-2.] Defendant also made a claim for UM coverage pursuant to her automobile insurance policy with Plaintiff.

**II. The Policy.**

Plaintiff is an insurance company that issued a personal automobile policy, Policy No. 6139P393928, to Defendant with effective dates of August 19, 2017 to October 3, 2017 (the "Policy"). [ECF No. 1-1.] The Policy provides UM limits of $50,000 per person for bodily injury and $50,000 per occurrence for property damage. *Id.* at 7. The Policy's UM provision provides in relevant part:

> **We** will pay damages, including derivative claims, because of **bodily injury** suffered by **you** or a **relative**, and because of **property damage**. Such damages must be due by law to **you** or a **relative** from the owner or driver of:

---

[2] Ultimately, even if the fact of movement is in dispute, the court's analysis is not tied to the movement of the vehicle. The fact, therefore, is not material to the court's ruling. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

3

> 1. An **uninsured motor vehicle**; []
>
>  y. . .
>
> Damages must result from an accident arising out of the ownership, maintenance, or use of the **uninsured motor vehicle**[.]

*Id.* at 25. Accordingly, Defendant is not entitled to coverage under the Policy unless her injuries resulted "from an accident arising out of the ownership, maintenance, or use" of the uninsured motor vehicle.[3]

**III. This Lawsuit.**

Plaintiff filed a declaratory judgment complaint on October 21, 2020. [ECF No. 1.] Therein, Plaintiff seeks two declarations: (1) the Policy does not provide UM coverage for any injuries arising out of the September 16, 2017 shooting because the injuries did not arise out of the ownership, maintenance, or use of the uninsured vehicle and (2) the Policy does not provide UM coverage for the injuries because there was not any physical contact between the uninsured vehicle and Defendant. *See generally, id.*

Plaintiff moved for summary judgment on July 7, 2021. [ECF No. 15.] Defendant filed her response in opposition, ECF No. 16, and Plaintiff filed a reply, ECF No. 17. The matter is now ripe for resolution by the court.

---

[3] The Policy's language tracks South Carolina's statutory requirement that no automobile insurance policy may be issued "unless it contains a provision insuring . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of [] motor vehicles within the United States[.]" S.C. Code Ann. § 38-77-140(A). Defendant does not dispute the relevant Policy language or the relevant South Carolina code section. [*See* ECF No. 16 at 3 ("There is no dispute as to the relevant Nationwide UM policy language, the relevance of the S.C. code, nor the application of the '*Aytes* test.'").]

4

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## ANALYSIS & DISCUSSION

The present dispute surrounds whether Defendant's gunshot injuries arose out of the ownership, maintenance, or use of the uninsured vehicle. To resolve the dispute, the court must apply the South Carolina Supreme Court's three-part test as set forth in *State Farm Insurance & Casualty Co. v. Aytes*, 503 S.E.2d 744, 745 (S.C. 1998). The test provides that an injury arises out of the ownership, maintenance, or use of a vehicle when (1) there is a causal connection between the vehicle and the injury; (2) no act of independent significance occurred which broke the causal link; and (3) the vehicle was being used for transportation at the time of the assault. *Id.*

Here, Plaintiff argues that Defendant cannot establish any of the three *Aytes* test requirements. [ECF No. 15-1.] In making the arguments, Plaintiff relies primarily on a South Carolina Supreme Court case, *State Farm Mutual Automobile Insurance Co. v. Bookert*, 523 S.E.2d 181 (S.C. 1999). Defendant argues that Plaintiff's reliance on *Bookert* is "misplaced" and the *Aytes* test favors a finding of UM coverage. [ECF No. 16.] As outlined below, the court finds the first element of the *Aytes* test—causal connection—dispositive of this case and focuses its analysis there.

The first requirement of the *Aytes* test is met when there is a causal connection between the injury and the vehicle. Causal connection has several requirements of its own. *See Bookert*, 523 S.E.2d at 182 (noting the three "components of the causal connection requirement"). First, the vehicle must be an "active accessory" to the assault. *Aytes*, 503 S.E.2d at 745. Second, the connection must be "something less than proximate cause and something more than the vehicle being the mere site of the injury." *Id.* And third, the "injury must be foreseeably identifiable with the normal use of the vehicle." *Id.* at 745–46.

As to whether the "causal connection" requirement is met in this case, the parties submit two lines of cases. Plaintiff's line of cases focuses on the third causal connection requirement—

foreseeably identifiable injury with the normal use of the vehicle. Defendant's cases, two of which predate *Aytes*, found a causal connection in similar factual circumstances.

**I.  *Bookert*, *Holmes*, *Bland*: Foreseeably Identifiable Injury with Normal Use of Vehicle.**

Plaintiff's main argument[4] relates to the third causal connection requirement as applied in *Bookert*. [ECF No. 15-1 at 7–9.] Specifically, Plaintiff submits that that the case before this court is "factually similar" to *Bookert*. *Id.* at 7.

In *Bookert*, the insured stopped at a Hardee's restaurant, where two soldiers and 15 individuals were involved in an altercation. The insured left Hardee's and went to a McDonald's. Fifteen of the men also moved from the Hardee's to the McDonald's. The two soldiers, armed and in a vehicle, drove to the McDonald's and circled the parking lot, looking for the 15 men. When the soldiers' vehicle was stopped at a traffic light, the "vehicle jerked forward," a "soldier wielding a shotgun fell," and his gun fired. 523 S.E.2d at 292. That shot did not hit the insured, "but while the vehicle was still moving forward, the passenger fired the handgun striking [the insured] with a bullet in each leg." *Id.* at 292–93. The South Carolina Supreme Court found that the policy at issue did not cover the insured's injuries because they were not foreseeably identifiable with the *normal* use of an automobile. *Id.* at 293.

Like *Bookert*, the shooting here was part of an ongoing altercation between two groups—both inside and outside of the nightclub. Also like the injured person in *Bookert*, Defendant here was a pedestrian. And, according to Plaintiff, the only logical conclusion then is that Defendant's

---

[4] Plaintiff also argues generally that the vehicle was the mere site from which the gunshots were fired and not an "active accessory" to the assault," *i.e.*, the first and second causal connection requirements. [ECF No. 15-1 at 7, 9–10.] Given the court's holding on the third causal connection requirement, it declines to reach Plaintiff's general arguments on the first two requirements.

7

gunshot injuries—just like the insured's injuries in *Bookert*—are not foreseeably identifiable with the normal use of an automobile.

Plaintiff also points to two cases from this District in support of its conclusion that the injuries here are not foreseeably identifiable with the normal use of an automobile. The first is *Holmes v. Allstate Insurance Co.*, 786 F. Supp. 2d 1022 (D.S.C. 2009). In that case, the plaintiff was parked on the side of the road waiting for a school bus when an acquaintance pulled up, stopped his car next to plaintiff's, and shot her several times before leaving the scene. *Id.* at 1024. The court distinguished two South Carolina state cases, *Howser* and *Towe* (discussed below), and concluded that, unlike those cases, the acquaintance's car did not "act[] as an active accessory to his assault on Plaintiff." *Id.* at 1027. Further, it found that even if the vehicle was an active accessory to the assault, *Bookert* was more factually similar and "precludes a finding that a causal connection exists." *Id.* Despite likening the assault to a "drive-by shooting," the court found that "*Bookert* establishes that such use of a vehicle will not satisfy the causal connection requirement necessary to invoke insurance coverage, since such conduct is not foreseeably identifiable with the normal use of an automobile." *Id.*

The second case, *GEICO v. Bland*, No. 2:19-cv-0820, 2019 WL 6463792, at *2 (D.S.C. Dec. 2, 2019), involves a similar drive-by-shooting situation. There, the injured party alleged that, while she was in an outdoor common area, a vehicle drove up to her and the passenger in the vehicle fired a gun causing her injuries. *Id.* at *2. The court granted the insurance company's motion for judgment on the pleadings, finding the *Aytes* test was not satisfied.

Plaintiff argues this case is akin to *Bookert*, *Holmes*, and *Bland*, and the court should similarly conclude that the gunshot injuries sustained by Defendant do not arise out of the ownership, maintenance, or use of an automobile.

8

**II.  *Groves*, *Howser*, and *Towe*:  Sufficiently Distinguish the Present Case from *Bookert*?**

In response to Plaintiff's arguments, Defendant argues that *Bookert* does not create a bright-line rule that gunshot injuries sustained by a pedestrian never arise out of the use of an automobile. [ECF No. 16 at 4–5 (citing *Progressive Direct Ins. Co. v. Groves*, 847 S.E.2d 114 (S.C. Ct. App. 2020), *cert. granted* (Apr. 19, 2021) ("[W]e disagree with the proposition that *Bookert* created a bright line rule that gunshot injuries are not foreseeably identifiable with the normal use of an automobile.").]  In that regard, Defendant points to *Groves*, *Howser*, and *Towe*—two of the three involving gunshot injuries and courts finding coverage exists—and argues "[o]ur facts are similar" to those cases.  *Id.* at 6.

The most recent decision is one by the South Carolina Court of Appeals, *Groves*.  There, Lynn Harrison's ("Harrison") vehicle was met by Jimi Redman's ("Redman") vehicle at an intersection. As the vehicles approached the intersection, Redman was making gestures and blowing kisses at Harrison.  While stopped at the intersection, Redman pointed a rifle at Harrison and fired a shot, striking Harrison and killing her.  The circuit court granted summary judgment to the insurance company, finding the death did not arise out of Redman's ownership, maintenance, or use of a vehicle because there was no casual connection between Redman's use of the vehicle and Harrison's death, and, even if there was, the shooting of the rifle was an intervening act of independent significance that broke the causal connection.  847 S.E.2d at 117.  The South Carolina Court of Appeals reversed the circuit court's decision.

As to the "foreseeably identifiable" injuries requirement, the court of appeals specifically distinguished *Groves*'s facts from *Bookert*'s facts.  Specifically, the court noted that the injured party in *Bookert* was "on foot when he was assaulted."  *Id.* at 123 ("[T]he facts are more consistent with the vehicle-to-vehicle shooting in *Howser* than the vehicle-to-pedestrian shooting in

9

*Bookert*."). It further noted that *Bookert* "did not overrule" a prior shooting injuries case, *Howser*, "in which the court found a causal connection between the use of the vehicle and the injuries suffered by the victim of a *vehicle-to-vehicle* shooting." *Id.* (emphasis added). Having distinguished *Bookert*, the court of appeals concluded, "pursuant to *Howser*," that Harrison's death was foreseeably identifiable with the normal use of a vehicle. *Id.*

The next logical question is, what happened in *Howser*? In *Howser*, the insured was driving her car when she was chased down and shot by the driver of a second vehicle. 422 S.E.2d at 107. The court in that case easily concluded that the assailant's vehicle was an "active accessory to the assault" because "[o]nly through the use of his vehicle was the assailant able to closely pursue" the insured and "carry out the pistol assault." *Id.* at 108. Further, the court found that there was no break in the causal connection because "the unknown driver's use of his vehicle and the shooting were inextricably linked as one continuing assault." *Id.* at 109.[5] As implied in *Groves*, *Howser* suggests that when there is a vehicle-to-vehicle pursuit situation, the shooting injuries may be foreseeably identifiable with the normal use of a vehicle. 847 S.E.2d at 123.

The final decision relied upon by Defendant is *Towe*, a pre-*Aytes* decision from this District. *Towe* is different from *Groves* and *Howser* in that it did not involve a vehicle-to-vehicle situation. It is also different from *Groves*, *Howser*, *Bookert*, and the present case in that it did not involve shooting injuries. There, the driver threw a bottle from his moving vehicle at a road sign. 441 S.E.2d at 826. The bottle struck the steering wheel of a tractor, seriously injuring the driver of the tractor. The court held that the injuries arose out of the use of an automobile because the "use of the automobile placed [the driver] in the position to throw the bottle at the sign and the vehicle's

---

[5] *Howser*, which predates *Aytes*, did not do separate assessment of whether the injury was foreseeably identifiable with the normal use of the vehicle.

10

speed contributed to the velocity of the bottle increasing the seriousness of [the] injuries," and the use of the automobile and throwing of the bottle were "inextricably linked" as one continuing act. *Id.* at 827.

Defendant argues the facts here are "incredibly similar" to the *Groves*, *Howser*, and *Towe* line of cases because "the subject vehicle and the shooting were inextricably linked such that no act of independent significance broke the causal connection between the vehicle and the shooting." [ECF No. 16 at 8.] This may be true. However, the argument generally ignores the additional causal connection requirement that the insured's injuries are foreseeably identifiable with the normal use of an automobile. *See Groves*, 847 S.E.2d at 123 (distinguishing *Bookert* but still analyzing the foreseeably identifiable with the normal use of an automobile requirement).

Defendant's only attempt at addressing the causal connection requirement is one wholly unsupported by the undisputed facts in the record. Specifically, Defendant tries to argue around the requirement by submitting this "is not a case where a brawl broke out between two parties, and incidentally spilled outside of a restaurant when the parties began using vehicles and fired weapons . . ., as was the case in *Bookert*." *Id.* As the court outlines in detail below, this argument is simply a failed effort to distinguish *Bookert*.

### III. Where Does this Case Fall?

So, which is it? Does this case present the *Bookert* scenario (that the South Carolina Court of Appeals recently limited to its facts) as suggested by Plaintiff? *See Groves*, 847 S.E.2d at 123 ("[W]e conclude that the holding in *Bookert* is limited to the facts of that case."). Or does it present the *Groves*, *Howser*, *Towe* scenario as argued by Defendant? After careful review of the cases presented, the court finds the undisputed facts before it are akin to the facts in *Bookert*, *Holmes*, and *Bland*.

While the South Carolina Court of Appeals limited *Bookert* to its facts, those facts are directly analogous to the facts here. *Bookert* involved an innocent pedestrian struck and injured as the result of a drive-by shooting, and Defendant here was an innocent pedestrian struck and injured as the result of a drive-by shooting.[6] Further, the vehicle in this case was used in the same manner in which the vehicle was used in *Bookert*: to locate the intended target; to position the assailant near the intended target; and to leave the scene of the crime. *See Holmes*, 786 F. Supp. 2d at 1027 (performing same analysis and coming to the same conclusion). Thus, even if *Bookert* is limited to its facts (a pedestrian-injured and drive-by-shooting situation), that's exactly what is currently before this court.

The court also finds Defendant's cases readily distinguishable from this case. As explained in *Holmes*, the *Howser* court "found a causal connection based on its consolidation of both the vehicular chase and the gunshot assault as a single 'ongoing assault.'" *Id.* at 1026. The assailant used his vehicle to ram the victim's vehicle several times, chase the victim down on the highway, and position himself in a manner to shoot the victim. None of those facts exist here. The driver of the vehicle was not pursuing Defendant, did not use the vehicle to target Defendant or Defendant's vehicle, did not chase Defendant down the highway, and did not use the vehicle itself to aim at Defendant.

*Towe* is dissimilar from this case for the same reasons. The court there "considered the assailant's vehicular movement and the ultimate assault as a single continuing act because the movement of the vehicle *increased the severity* of the assault." *Id.* (emphasis added). There is no

---

[6] Again, whether the vehicle was moving at the time of shooting is of no consequence to the court's analysis. Even if the court concludes that there is a dispute over that fact, it does not change the result here.

12

evidence before this court that the severity of the assault increased due to the shooting coming from the vehicle.

And finally, unlike in *Groves*, the facts here are not "more consistent with the vehicle-to-vehicle shooting in *Howser* than the vehicle-to-pedestrian shooting in *Bookert*." 847 S.E.2d at 123. The facts are entirely consistent with the vehicle-to-pedestrian shooting in *Bookert*.

For these reasons, the court finds that this case presents the *Booker* scenario, as suggested by Plaintiff. There is no causal connection between the use of the vehicle and Defendant's injuries because the injuries are not foreseeably identifiable with the normal use of an automobile. Plaintiff is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff Nationwide Affinity Insurance Company's Motion for Summary Judgment, ECF No. 15, is **GRANTED**. The court **DECLARES** that the Policy does not provide UM coverage for Defendant's injuries arising out of the September 16, 2017 shooting.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

January 14, 2022
Florence, South Carolina

13